IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KATHY JEAN ORNDORFF | * |
| v. | * Civil No. JFM-00-82 |
| BALTIMORE COUNTY, MARYLAND | * |

MEMORANDUM

Plaintiff has brought this action against Baltimore County, Maryland under 42 U.S.C. § 1983. She alleges that her constitutional rights were violated while she was detained at the Baltimore County Detention Center for Women. Defendant has filed a motion to dismiss or for summary judgment. The motion will be granted.

I.

Plaintiff was taken to the Baltimore County Detention Center for Women on the evening of May 13, 1998 for pre-trial detention. She was given a medical screening by a qualified medical professional employed by EMSA/EHG, the medical contractor for Baltimore County's Bureau of Corrections. During the preliminary screening plaintiff stated that she had suffered panic attacks. There is a factual dispute as to what she said about the medication she was taking. She asserts that she advised the person doing the screening that she was taking Xanax. The medical admissions chart reflects that she stated she was taking Premarin and Ativan.

On May 13th, plaintiff made two written requests for medication. In the requests she stated that she had been taking anti-anxiety medication for seven years and was told not to stop taking it. One of the requests states that plaintiff was starting to go through severe withdrawal. Neither of the requests specifically states the name of the medication that plaintiff was taking.



On May 14th, plaintiff was given a full medical examination. The physician's assistant ordered Premarin and "referred [plaintiff] to psych for H/O [history of] panic attacks on ativan." A physician countersigned both orders. Premarin was ordered for plaintiff. A psych referral note was also written. The note states that plaintiff "takes Ativan IIIX daily. Last dose II days ago." The word "Refused" was written by the psychiatrist, Dr. Richard Silver, the same day. Plaintiff denies that she refused to be seen by the psychiatrist.

On May 15th plaintiff wrote another request, stating that she was in need of her anti-anxiety medications, that she was withdrawing, still in need of Premarin, and was going to have to go to the hospital. Later that day she wrote another request for both her anti-anxiety medication and her Premarin. She states that if she is not seen soon, she "will not be able to function and maybe experience seizure." Again, on May 16th, she wrote a request, stating "the nurse just left, still they have not given me my medication, am experiencing tingling in left arm and fingers, fear, can feel heart beating in my head and chest very hard, have spoken to everyone who I can speak to, nobody knows my medication was not sent."

At 2:31 a.m. on May 17th, plaintiff wrote another note saying "Lt. Lightner said that I would have seen you yesterday. Am being denied medical treatment."

At 5:00 a.m., 6:00 a.m., and 11:50 a.m. on May 17th plaintiff was seen for complaints related to needing her medication. The medication by this time was being identified as Xanax. The notes reflect that the psychiatrist was aware of plaintiff's complaints because of the "yellow psych slips inmate had put in many times." On May 18th at 9:15 a.m. plaintiff was seen by a nurse. The nurse's note reflects that plaintiff was on Ativan for panic attacks, had been referred to a psychiatrist on intake but had refused to see him. When the nurse asked plaintiff why she

2

had refused to see the psychiatrist, plaintiff became angry and walked out of the room. Minutes later the nurse was called to the floor where plaintiff was housed. Plaintiff was sitting in her bunk stating "Something happened to me, my eye just went crazy and I was shaking." The nurse advised plaintiff that she had refused care and would have to wait to be seen in turn. The nurse also observed that plaintiff was not shaking and that she was alert and oriented as to person, time, and place.

Soon thereafter plaintiff suffered from a possible seizure. She was then transferred to the main facility of the Detention Center and placed on close medical watch until May 20th. During the period of medical observation, plaintiff received care for possible seizure activity. Her condition was noted on the hourly medical observation log and on progress notes completed by the professional medical staff. According to the medical chart, plaintiff was observed as yelling, laughing, and talking to herself. On two occasions it is noted that she removed her own clothes. On another occasion, according to the chart, after being offered use of bathroom facilities and not comprehending, she urinated on her clothes. She was provided with clean, dry clothing after she was cleaned by the medical staff.

On May 19th and May 20th, plaintiff was examined by a psychiatrist. The psychiatrist wrote a complete note, concluding that plaintiff was suffering from Xanax withdrawal.

II.

The only defendant plaintiff has named is Baltimore County. In order to prevail against the County, plaintiff must establish that the County has a policy or practice of denying adequate medical care. See Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Here, it is clear from the record that plaintiff not only has not established any such

3

policy or practice, but would be unable to do so after conducting discovery. If the correctional

officers at the Detention Center had not passed on the medication request plaintiff was making,

perhaps such a policy or practice could be inferred. However, plaintiff does not allege that they

failed to do so, and the record affirmatively establishes that the medical staff was aware of the

slips plaintiff had submitted.

It might be argued that the medical staff was not sufficiently responsive to plaintiff's

medical needs.[1]  However, assuming that to be so, the County is not vicariously responsible for

the default of the medical staff absent evidence, of which there is none, that the County was

aware of such defaults in the past. Indeed, the record establishes that although it is unfortunate

that plaintiff's dependence upon Xanax was not earlier diagnosed (whether that be due to a

miscommunication, what defendant asserts was plaintiff's refusal to been seen by a psychiatrist,

or a combination thereof), the procedures that the County's medical contractor had in place were

sufficient to meet constitutional muster.[2]

---

[1]This opinion does not address whether plaintiff could state a claim for unconstitutional denial of medical care against the County's medical contractor, EMSA/EHG, since EMSA/EHG has not been named as a defendant.

[2]Plaintiff also asserts that the County can be held liable because her clothes were removed in the view of male prisoners and because she was improperly disciplined for having refused medical treatment. As to the first of these claims, there is absolutely no evidence that the County was responsible for the removal of plaintiff's clothing. To the contrary, the record establishes that plaintiff removed her own clothing during her period of medical observation. All plaintiff can assert is that she lost consciousness and awoke with no clothing on. That assertion is not sufficient to meet her burden of proof, particularly in light of the contemporaneous evidence, contained in the medical chart, showing that plaintiff herself removed her clothes. As to the plaintiff's improper discipline claim, no liberty interest was implicated. Plaintiff does not deny that she was given full procedural due process rights and the disciplinary segregation on which she was placed did not impose any "atypical and significant hardship" upon her. Sandin v. Conner, 515 U.S. 472, 484 (1995).

4

A separate order is being entered herewith granting summary judgment to defendant.

Date: February 29, 2000

                                    J. Frederick Motz
                                    United States District Judge